# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KEISHA BANKS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:23CV1112 |
| ALAMANCE-BURLINGTON BOARD OF EDUCATION, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on Defendant Alamance-Burlington Board of Education's ("Defendant") Amended Motion to Dismiss Plaintiff Keisha Banks' ("Plaintiff") Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry 10.) Plaintiff has filed a response in opposition and Defendant has filed a reply. (Docket Entries 15, 17.) For the reasons stated herein, the undersigned recommends that Defendant's motion be granted in part and denied in part.

## I. BACKGROUND

Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.*, and under North Carolina state law, seeking damages for Defendant's alleged unlawful employment discrimination. (*See generally*, Complaint, Docket Entry 4.) More specifically, Plaintiff, an African American female and 20-year educator, began serving as Defendant's Executive Director of Exceptional Children around the start of August 2018 until approximately mid-July 2022 when she was demoted by Defendant's then newly

1

appointed Chief Student Services Officer Kristi Davis ("Ms. Davis"), a Caucasian female. (*Id.* ¶¶ 1, 9-11.) Upon information and belief, Defendant allegedly hired a new Superintendent, Dain Butler, a Caucasian male, a few weeks earlier on or around July 1, 2022. (*Id.* ¶ 12.) Plaintiff alleges that prior to being demoted, she was one of three African American females serving in a leadership position within Alamance-Burlington County School System's leadership cabinet, and upon information and belief, none remained in those positions after Mr. Butler's hiring. (*Id.* ¶¶ 13-14.) Further, upon information and belief, Plaintiff alleges that the individual that replaced her was a Caucasian female who was unqualified and lacked the required licensure for the position. (*Id.* ¶¶ 16-17.)

As to the time immediately preceding her demotion, Plaintiff alleges that in June 2022, her performance evaluations were "exemplary." (*Id.* ¶ 20.) In 4 of 5 categories, Plaintiff received the highest rating, "Distinguished," and received an "Accomplished" rating in the fifth category. (*Id.* ¶ 21.) While, upon information and belief, Ms. Davis allegedly "never evaluated Plaintiff's job performance prior to demoting her," on or around July 7, 2022, Ms. Davis began "gathering 'data' on the 'state of affairs' within the Department of Exceptional Children." (*Id.* ¶¶ 23-24.) The Complaint notes a letter Ms. Davis addressed to Plaintiff, regarding information from "'various stakeholders' within the district regarding Plaintiff's leadership," and whereby Ms. Davis "cites issues with Plaintiff's communication, professionalism, leadership, priorities, and compliance." (*Id.* ¶¶ 25-26.) Plaintiff further alleges that, upon information and belief, the "compliance" issue referred to in the letter involved funds used "with no collection of data" which Plaintiff asserts occurred during Ms. Davis's tenure as Executive Director of Exceptional Children, rather than Plaintiff. (*Id.* ¶ 33.) Plaintiff

2

alleges that she received the letter from Ms. Davis on or around July 19, 2022, which reassigned Plaintiff to the Exceptional Children Program Specialist position effective July 20, 2022, without any discussion on the "data" gathered, or information on the "stakeholders." (*Id.* ¶¶ 27-29.) The letter further stated that "Plaintiff would have an opportunity to work alongside staff to improve [her] knowledge base and receive coaching from a new Executive Director," however, upon information and belief, the demotion involved Plaintiff working with people she "previously supervised and evaluated." (*Id.* ¶¶ 30-31.) Ultimately, Plaintiff formally rebutted the content of Ms. Davis's letter on July 21, 2022. (*Id.* ¶ 32.)

In addition, Plaintiff makes these allegations surrounding her demotion upon information and belief: (1) no Caucasians in leadership positions were demoted without warning like Plaintiff; (2) several Caucasians working within the Exceptional Children Department "were evaluated and rated far less than Plaintiff;" and (3) no Caucasians in the department were demoted like Plaintiff. (*Id.* ¶¶ 35-37.) The demotion resulted in Plaintiff being relocated to another office and she alleges, upon information and belief, that she lost her longevity pay. (*Id.* ¶¶ 38, 42.) Moreover, Plaintiff alleges that if her work performance was in question, Defendant, upon information and belief, failed to follow its own policy by not providing her with an action plan to address any deficiencies. (*Id.* ¶¶ 40-41.) As a result, Plaintiff asserts a Title VII claim and a claim for intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 47-58.)

## II. DISCUSSION

Defendant moves to dismiss on several grounds: (1) Plaintiff's Complaint is untimely; (2) Plaintiff's Complaint fails to state a plausible Title VII claim for racial discrimination where

3

it pleads on its face the non-discriminatory reasons for the employment decision; (3) Plaintiff's IIED claim is barred by the doctrine of governmental immunity; and (4) Plaintiff's Complaint fails to allege facts sufficient to state an IIED claim. (Docket Entry 11 at 4-19.) In response, Plaintiff contends that her Complaint was timely filed, and she has stated a *prima facie* Title VII claim. (Docket Entry 15 at 6-10.)[1]

A motion to dismiss pursuant to Rule 12(b)(6)[2] tests the sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Id.*; *see also Simmons v. United Mortg. and Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face.") (citations and quotations omitted). The "court accepts all well-pled facts as true and construes these facts

---

[1] Plaintiff did not address Defendant's arguments related to the IIED claim. Rather, she simply stated, "Plaintiff has elected not to brief the [C]ourt on the [IIED claim]." (Docket Entry 15 at 11.) By failing to respond, the undersigned construes Plaintiff's response as a concession on these arguments. *See Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08CV00918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (unpublished) ("[I]n a variety of different contexts, a large number of courts . . . have recognized the general principle that a party who fails to address an issue has conceded the issue.") (collecting cases). Accordingly, the undersigned will recommend that this claim be dismissed.

[2] Defendant moves for dismissal of Plaintiff's IIED claim pursuant to Rule 12(b)(1) arguing that it is barred by the doctrine of governmental immunity. "[T]he governmental immunity defense under North Carolina law presents a question of jurisdiction." *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 700 (E.D.N.C. 2009) (collecting cases). Again, Plaintiff has conceded to Defendant's arguments related to her IIED claim. Thus, the undersigned will not further address this claim.

4

in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, and bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible she is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 557).

    A. <u>Plaintiff's Title VII Complaint was timely filed.</u>

Defendant first argues that Plaintiff's Complaint is untimely. (Docket Entry 11 at 4-10.) Defendant contends that Plaintiff failed to file her Complaint within 90 days of receiving the right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), and "state procedural rules cannot be used to extend a federal statute of limitations." (*Id.* at 9.) Under 42 U.S.C. § 2000e-5(f)(1), "the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . ." The ninety-day filing period does not act as a jurisdictional bar but rather as a statute of limitations. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Equitable tolling of the statute of limitations may be permitted in cases where "a claimant has received inadequate notice, . . . or where a motion for appointment of counsel is pending and equity would justify tolling the statutory period until the motion is acted upon, . . . or where the court has led the plaintiff to believe that she had done everything required of her," or "where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). However,

5

mere "failure to comply with the Rules" is not sufficient to apply the equitable tolling doctrine. *See id.* at 151-152.

Here, Plaintiff's right-to-sue letter from the EEOC was issued on August 1, 2023. (*See* Docket Entry 4-2.) Within 90 days thereafter on October 25, 2023, a "Civil Summons to be Served with Order Extending Time to File Complaint" was issued by the state court (Docket Entry 5), and on November 14, 2023, Plaintiff filed her Complaint in state court. (Docket Entry 4.)

Pursuant to the North Carolina Rules of Civil Procedure:

> A civil action may ... be commenced by the issuance of a summons when
> (1) A person makes application to the court stating the nature and purpose of his action and requesting permission to file his complaint within 20 days and
> (2) The court makes an order stating the nature and purpose of the action and granting the requested permission.

N.C. R. Civ. P. 3(a)(1)-(2). Plaintiff timely filed her action in state court. Indeed, Defendant does not dispute Plaintiff's compliance with the state procedural rules. (*See* Docket Entry 11 at 7 ("Plaintiff filed a motion for extension of time to file a complaint with the Alamance County Superior Court and secured a summons from that court. Under Rule 3(a) of the North Carolina Rules of Civil Procedure, a 'civil action' is technically commenced when a motion for extension of time is filed and granted[,] and a summons is issued.").) However, Defendant argues that Plaintiff cannot use the state procedural rules "to obtain an additional 20 days to file a complaint," thereby "thwart[ing] the limitations period" under federal law. (*Id.* at 9.)

Defendant's argument is unpersuasive. First, Title VII actions may be initiated in either federal or state court. *Lassiter v. LabCorp Occupational Testing Servs., Inc.*, 337 F. Supp. 2d 746,

6

751 (M.D.N.C. 2004). Second, this Court has held that compliance with Rule 3 of the North Carolina Rules of Civil Procedure in commencing Title VII and similar actions is permissible. *See Allen v. Fed. Express Corp.*, No. 1:09CV17, 2009 WL 3234699 at *4 (M.D.N.C. Sept. 30, 2009) ("[A] plaintiff may initiate a Title VII action in a North Carolina state court utilizing either means set forth in Rule 3 of the North Carolina Rules of Civil Procedure[.]"); *Lassiter*, 337 F. Supp. 2d at 752 (same); *Sheaffer v. Cnty. of Chatham*, 337 F. Supp. 2d 709, 723-25 (M.D.N.C. 2004) (holding that the plaintiff's claims under the Americans with Disabilities Act ("ADA") filed after receiving a 20-day extension under Rule 3 were timely).[3] Further, sister courts within North Carolina have also agreed. *See e.g.*, *Sam-Kabba v. G4S Secure Sols. (USA) Inc.*, No. 5:18-CV-330-FL, 2019 WL 1003628, at *3-4 (E.D.N.C. Mar. 1, 2019) (compliance with state rule permitted); *Koures v. Pfizer, Inc.*, No. 3:10-CV-00499, 2011 WL 1869970, at *7 (W.D.N.C. May 16, 2011) ("While Rule 3 of the Federal Rules of Civil Procedure does not provide a mechanism for enlargement of time to file a Complaint, that rule simply does not come into play or apply retroactively to an action timely commenced in a forum where jurisdiction was properly laid.").

In support of its argument, Defendant points to *Cannon v. Kroger*, 832 F.2d 303 (4th Cir. 1987). (Docket Entry 11 at 7-9.) However, this Court has already addressed *Cannon* in *Sheaffer*:

> Defendants cite *Cannon v. Kroger Co.*, in which the Fourth Circuit held that the Rule 3 procedure could not be used to extend the six-month statute of limitations for so-called "hybrid" § 301/fair representation claims under the National Labor Relations Act. Defendants seek to extend this rule to contexts beyond the "hybrid" claims that *Cannon* discusses. The reasoning of *Cannon*,

---

[3] The Court in *Sheaffer* noted that "[t]he ADA adopts the procedures of Title VII of the Civil Rights Act of 1964 governing administrative review by the EEOC." 337 F. Supp. 2d at 723.

7

> however, makes clear that the rationale for barring the operation
> of Rule 3 was motivated by a desire for uniformity in "hybrid"
> cases that had been expressed by the Supreme Court. . . .
>
>     *Cannon* . . . suggest that the operation of Rule 3 should
> only be barred when there are strong federal interests that favor
> a strictly construed federal statute of limitations. Here, there are
> no similar circumstances.

337 F. Supp. 2d at 724-25 (internal citations omitted); *see also Smith v. Bank of the Carolinas*, No. 1:11CV1139, 2012 WL 4848993, at *8 (M.D.N.C. Oct. 11, 2012) (addressing *Cannon*), *report and recommendation adopted*, No. 1:11CV1139, 2013 WL 2156008 (M.D.N.C. May 17, 2013); *Koures*, 2011 WL 1869970, at *4-5 (W.D.N.C. May 16, 2011) (same). In the case at hand, Plaintiff's Title VII claim is not hybrid in nature. Therefore, consistent with *Sheaffer*, the rule as set forth in *Cannon* should not apply. Accordingly, Defendant's motion to dismiss on this ground should be denied.

    B. <u>Plaintiff's Complaint sufficiently alleges a Title VII claim.</u>

Defendant next argues that Plaintiff does not state a plausible claim for racial discrimination because the Complaint pleads non-discriminatory reasons for the employment decision. (Docket Entry 11 at 10-12.) "To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a plaintiff must plead enough factual allegations 'to state a claim to relief that is plausible on its face.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570). As previously stated, "[t]he purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint, not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (internal quotation marks and citation omitted). Thus, at the pleading stage in a Title VII

action, a plaintiff "is 'required to allege facts to satisfy the elements of a cause of action created by that statute.'" *Id.* quoting *McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015)).

Under Title VII, an employer is prohibited from "discharg[ing] any individual, or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may ultimately prove racial discrimination through direct evidence or with circumstantial evidence under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015). "To establish a *prima facie* case of race discrimination in employment under the *McDonnell Douglas* framework, a plaintiff must demonstrate: '(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.'" *Rorie v. Bd. of Educ. of Charles Cnty.*, 653 F. Supp. 3d 217, 230 (D. Md. 2023) (quoting *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 626 (4th Cir. 2015)). No prima facie case of discrimination is required at the motion to dismiss stage. *See Boone, v. Wells Fargo Bank, N.A.*, No. 1:22CV51, 2024 WL 2817570, at *3 (M.D.N.C. June 3, 2024) (unpublished). Instead, the Court must determine if Plaintiff "alleges facts that plausibly state a violation of Title VII above a speculative level." *Bing*, 959 F.3d at 617 (internal quotations and citation omitted).

Here, the undersigned concludes that Plaintiff has stated a plausible claim of racial discrimination under Title VII. She alleges that she is an African American who had

9

performed "exemplary" in her role as Executive Director and despite such, was reassigned and demoted by Ms. Davis, who had "never evaluated Plaintiff's job performance." (Compl. ¶¶ 19-21, 23.)[4] Plaintiff further alleges that in the reassignment letter, Ms. Davis noted that she received information regarding Plaintiff's leadership. (*Id.* ¶ 25.) While Ms. Davis "cite[d] issues with Plaintiff's communication, professionalism, leadership, priorities, and compliance[,]" Plaintiff alleges that Ms. Davis did not disclose the "stakeholders" who provided her with information nor the "data" itself prior to sending the letter. (*Id.* ¶¶ 26-27.) Further, Plaintiff alleges that the "compliance" issue was something occurring during Ms. Davis's tenure as Executive Director rather than Plaintiff. (*Id.* ¶ 33.) In any event, Plaintiff "formally rebutted every item of Ms. Davis's letter." (*Id.* ¶ 32.)

Furthermore, Plaintiff alleges that she was replaced by a Caucasian female that "did not have the qualifications nor did she possess the licensure required for the position." (*Id.* ¶ 17; *see also Lowman v. Maryland Aviation Admin.*, No. CV JKB-18-1146, 2019 WL 133267, at *5 (D. Md. Jan. 8, 2019) ("[W]here a plaintiff alleges that she was the better qualified candidate for a promotion and yet was denied it, circumstances giving rise to an inference of discrimination exist."). Furthermore, there are allegations that no Caucasians in leadership positions were demoted without warning like Plaintiff, several Caucasians working within the Exceptional

---

[4] As previously noted, the allegation that Ms. Davis "never evaluated Plaintiff's job performance" and several other allegations are "upon information and belief." (*See e.g.*, Compl. ¶¶ 14-18, 22-23, 33-37, 40-42.) Defendant does not specifically challenge such designation. "A plaintiff is generally permitted to plead facts based on 'information and belief' if such plaintiff is in a position of uncertainty because the necessary evidence is controlled by the defendant[,]" *Ridenour v. Multi-Color Corp.*, 147 F. Supp. 3d 452, 456 (E.D. Va. 2015), and "a district court must take care at the 12(b)(6) stage to avoid conflating the question of whether the asserted facts state a plausible claim with the question of whether such facts are accurate and/or pled in good-faith." *Id.*

10

Children Department "were evaluated and rated far less than Plaintiff," and no Caucasians in the department were demoted like Plaintiff. (*See* Compl. ¶¶ 35-37.) Therefore, accepting the factual allegations as true and viewing all reasonable inferences in Plaintiff's favor, the undersigned concludes that the Complaint states a plausible claim of discrimination on the basis of race in violation of Title VII.

Defendant argues that "Plaintiff has pled the precise, non-discriminatory basis for her reassignment[,]" thus "she fails to plead a plausible claim that her reassignment was 'because of race.'" (Docket Entry 11 at 11-12.) The undersigned disagrees. "[U]nder *Iqbal* and *Twombly*, the Court must consider the plausibility of inferring discrimination based on [a plaintiff's] allegations in light of an 'obvious alternative explanation' for the conduct." *Woods v. City of Greensboro*, 855 F.3d 639, 649 (4th Cir. 2017) (citation omitted). Stated differently, the Court "must be satisfied that [Defendant's] explanation for [its actions] does not render [Plaintiff's] allegations implausible." *Id.*; *see also Bing*, 959 F.3d at 618 ("Rather than drawing a reasonable inference, we would have to 'speculate' to 'fill in the gaps' as to [the employer's] motivation for the search and to disregard the reason given to [the plaintiff] for his termination.").

Here, while Plaintiff pleads allegations of Ms. Davis's reassignment letter, including areas Ms. Davis took issue with, Plaintiff also alleges that she rebutted the content of the letter. Further, as previously stated, Plaintiff alleges that no Caucasians in leadership were subject to demotion in the manner in which Plaintiff was, and no Caucasians in the department were demoted like Plaintiff. Therefore, the allegations of the reassignment decision, in light of other allegations, are not "so obviously an irrefutably sound and unambiguously nondiscriminatory and non-pretextual explanation that it renders [Plaintiff's] claim of pretext implausible."

11

*Woods*, 855 F.3d at 649; *see also Khazanie v. Univ. of N. Carolina at Chapel Hill*, No. 1:20CV1096, 2021 WL 5235296, at *5 (M.D.N.C. Nov. 10, 2021) ("'[The plaintiff's] allegations that she is a woman of color and Indian descent coupled with [the defendant's] treatment of her and the consistent high praise she received, contrasted with the reasons given for her termination "nudge[ ]" her claim "across the line from conceivable to plausible" (quoting *Twombly*, 550 U.S. at 570)). Therefore, Defendant's motion should be denied as to this issue.

### III. CONCLUSION

For the reasons stated above, **IT IS HEREBY RECOMMENDED** that Defendant Alamance-Burlington Board of Education's Amended Motion to Dismiss Plaintiff's Complaint (Docket Entry 10) be **GRANTED IN PART AND DENIED IN PART**. The motion should be **GRANTED** as it relates to Plaintiffs' state law intentional infliction of emotional distress claim for lack of jurisdiction due to governmental immunity, or alternatively for failure to state such a claim, but otherwise **DENIED**.

/s/ Joe L. Webster<br>
United States Magistrate Judge

June 20, 2024
Durham, North Carolina