# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KEISHA BANKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23CV1112 |
| | ) | |
| ALAMANCE-BURLINGTON | ) | |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This matter is before the undersigned on Defendant's Motion for Summary Judgment (Docket Entry 43; *see also* Docket Entry 44). Plaintiff has filed a Response in opposition to the Motion for Summary Judgment (Docket Entries 46, 47); Defendant has filed a Reply thereto (Docket Entry 55). The matter is ripe for disposition. For the reasons stated herein, the undersigned will grant Defendant's Motion for Summary Judgment (Docket Entry 43).

## I.    BACKGROUND

### a.    Factual Background

Plaintiff Keisha Banks ("Plaintiff") originally brought this action pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and under North Carolina state law, seeking damages from Defendant Alamance-Burlington Board of Education ("Defendant") for its alleged unlawful employment discrimination against her. (*See generally*

---

[1] By Order of Reference, this matter was referred to the undersigned to conduct all proceedings in this case pursuant to 28 U.S.C. § 636(c). (Docket Entry 29.)

Complaint ("Compl."), Docket Entry 4.) Plaintiff, an African-American female, served as Defendant's Executive Director of Exceptional Children ("EC") from August 2018 until July 20, 2022, when she was demoted[2] by Defendant's then newly appointed Chief Student Services Officer Kristi Davis ("Ms. Davis"), a Caucasian female. (*See id.* ¶¶ 1, 9-11.) Defendant hired a new Superintendent, Dain Butler ("Superintendent Butler"),[3] a Caucasian male, a few weeks earlier, on or around July 1, 2022. (*Id.* ¶ 12.) Plaintiff alleges that prior to being demoted, she was one of three African-American females serving in a leadership position within Alamance-Burlington County School System's ("ABSS") leadership cabinet, and, upon information and belief, that none remained in those positions after Superintendent Butler's hiring. (*Id.* ¶¶ 13-14.) Plaintiff further alleges, upon information and belief, that she was replaced by a Caucasian female who was unqualified and lacked the required licensure for the position. (*See id.* ¶¶ 16-17.)

Plaintiff alleges that in June 2022, she received an evaluation (the "June 2022 Evaluation") in which her performance was deemed "exemplary." (*See id.* ¶ 20.) In four of five categories, Plaintiff received the highest rating, "Distinguished[,]" and received an "Accomplished" rating in the fifth category. (*Id.* ¶ 21.) Plaintiff alleges, upon information and belief, that Ms. Davis "never evaluated Plaintiff's job performance prior to demoting her," and alleges that on or around July 7, 2022, Ms. Davis began "gathering 'data' on the 'state of affairs' within the Department of Exceptional Children." (*Id.* ¶¶ 23-24.) The Complaint

---

[2] Plaintiff characterizes this employment action as a "demotion" (*see generally* Compl.); Defendant characterizes it as a "reassignment" (*see generally* Docket Entry 44). As discussed below, the parties agree that this constituted an adverse employment action. (Docket Entry 55 at 8.) All citations herein to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

[3] Butler's name is listed as "Joseph Butler" in deposition filings. (Docket Entries 44-15, 54-3, 55-1.)

discusses a letter Ms. Davis addressed to Plaintiff (the "Reassignment Letter"), regarding information from " 'various stakeholders' within the district regarding Plaintiff's leadership," in which Ms. Davis "cites issues with Plaintiff's communication, professionalism, leadership, priorities, and compliance." (*Id.* ¶¶ 25-26.) Plaintiff alleges, upon information and belief, that the "compliance" issue referred to in the Reassignment Letter involved funds used "with no collection of data[,]" which Plaintiff asserts "occurred during Ms. Davis's tenure as Executive Director of [EC], as opposed to Plaintiff." (*Id.* ¶ 33.)

Plaintiff alleges that on or around July 19, 2022, she received the Reassignment Letter from Ms. Davis, which demoted Plaintiff to the EC Program Specialist position effective July 20, 2022, without any discussion of the "data" gathered, or information regarding the "stakeholders." (*Id.* ¶¶ 27-29.) The Reassignment Letter further stated that "Plaintiff would have an opportunity to work alongside staff to improve [her] knowledge base and receive coaching from a new Executive Director." (*Id.* ¶ 30.) Plaintiff alleges, upon information and belief, that "the demotion involved Plaintiff working alongside staff that she previously supervised and evaluated." (*Id.* ¶ 31.) Plaintiff alleges that on July 21, 2022, she "formally rebutted every item of [Ms.] Davis's letter[.]" (*Id.* ¶ 32.)

Plaintiff alleges the following upon information and belief: no Caucasians in leadership positions were demoted without warning like Plaintiff; several Caucasians working within the EC Department "were evaluated and rated far less than Plaintiff;" no Caucasians in the EC Department were demoted like Plaintiff; the demotion resulted in Plaintiff being relocated to another office; and Plaintiff lost her longevity pay. (*Id.* ¶¶ 35-38, 42.) Moreover, Plaintiff alleges, upon information and belief, that if her work performance was in question, Defendant failed to follow its own policy

3

by not providing her with an action plan to address any deficiencies. (*Id.* ¶¶ 40-41.) The Complaint asserts two claims for relief: (1) a Title VII race-discrimination claim and (2) a North Carolina state-law claim for intentional infliction of emotional distress ("IIED"). (*Id.* ¶¶ 47-58.)

**b.** <u>**Relevant Procedural Background**</u>

Plaintiff initiated this action in Alamance County Superior Court on November 14, 2023, and petitioned for its removal to federal court on December 20, 2023. (Docket Entry 1.) This action has come before this Court previously on Defendant's Amended Motion to Dismiss (Docket Entry 10, *see also* Docket Entry 11), which the undersigned granted in part as to Plaintiff's IIED claim and otherwise denied, in a recommendation (Docket Entry 18) later adopted in an order by District Judge Loretta Biggs (Docket Entry 22). Thus, Plaintiff's only surviving claim here is her allegation that Defendant violated Title VII. (*See id.*) On May 6, 2025, Defendant filed the Motion for Summary Judgment (Docket Entry 43) and an accompanying Memorandum (Docket Entry 44), to which it attached 18 exhibits:

- Exhibit A – July 19, 2022, Reassignment Letter
- Exhibit B – Board Determination Letter for September 20, 2022, hearing
- Exhibit C – Davis Review Summary and Findings for Board Appeal Hearing [("Davis Review Summary")]
- Exhibit D – June 15, 2022, Email (Hancock to Banks)
- Exhibit E – July 27, 2022, Email (Throm to Davis)
- Exhibit F – IDEA Grant Submission Chronology
- Exhibit G – Board's Discovery Responses; Table of Position Changes, April 10, 2025
- Exhibit H – Portions of Plaintiff's Personnel File
- Exhibit I – EEOC Charge 435-2023-00023
- Exhibit J – 2022 Annual Evaluation [("June 2022 Evaluation")]
- Exhibit K – Board Hearing Exhibits
- Exhibit L – EC Director Job Description (updated 2018)
- Exhibit M – Deposition Transcript Excerpts (Banks)
- Exhibit N – Deposition Transcript Excerpts (Davis)
- Exhibit O – Deposition Transcript Excerpts (Butler)

4

- Exhibit P – Affidavit of Yolanda Anderson
- Exhibit Q – Banks Rebuttal Letter July 21, 2022
- Exhibit R – Index of Exhibits

(Docket Entries 44-1 through 44-18.)[4]  Plaintiff subsequently filed a Response in opposition to the Motion for Summary Judgment (Docket Entries 46 and 47), to which it attached ten exhibits:

- Exhibit A – Deposition Transcript Excerpts (Davis)
- Exhibit B – Deposition Transcript Excerpts (Banks)
- Exhibit C – June 2022 Evaluation
- Exhibit D – July 19, 2022, Reassignment Letter
- Exhibit E – Banks Rebuttal Letter July 21, 2022
- Exhibit F – Banks EC Federal Grant Concerns Letter June 26, 2019 [("2019 Letter")]
- Exhibit G – Banks Grievance Letter August 17, 2022
- Exhibit H – Davis Review Summary
- Exhibit I – EEOC Charge 435-2023-00023
- Exhibit J – Board's Discovery Responses; Table of Position Changes, April 10, 2025

(*See* Docket Entries 46-1, 46-2, 46-3, 46-4, 47-1, 47-2, 47-3, 47-4, 47-5, 47-6.)  Defendant subsequently filed a Reply opposing said Response.  (Docket Entry 55.)

## II.    **DISCUSSION**

In response to Plaintiff's allegations, Defendant argues that Plaintiff has no direct evidence of racial discriminatory animus, that Plaintiff cannot make a prima facie showing of racial discrimination, and that Defendant had legitimate, non-pretextual, non-discriminatory reasons for reassigning Plaintiff.  (*See generally* Docket Entries 43, 44.)  Accordingly, Defendant seeks summary judgment in its favor on Plaintiff's claim.  (*Id.*)

---

[4] On June 27, 2025, Defendant filed a Correction Notice (Docket Entry 54) in which it stated that the "original exhibits offered at DE 44-13, 44-14, 44-15 had pages that were inadvertently omitted. … This filing simply adds the missing pages."  (*Id.*; *see also* Docket Entries 54-1, 54-2, 54-3, 55-1.)

### a. **Relevant Legal Standards**

#### i. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the burden of establishing the absence of such dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In analyzing a summary judgment motion, the Court "tak[es] the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). In other words, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him.' " *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (brackets in original) (quoting *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). If, applying this standard, the Court "find[s] that a reasonable jury could return a verdict for [the nonmoving party], then a genuine factual dispute exists and summary judgment is improper." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

Nevertheless, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Moreover, "the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment." *Lewis v.*

6

*Eagleton*, No. 4:08-cv-2800, 2010 WL 755636, at *5 (D.S.C. Feb. 26, 2010) (citing *Baber v. Hospital Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992)), *aff'd*, 404 F. App'x 740 (4th Cir. 2010); *see also Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) (explaining that "[m]ere conclusory allegations and bare denials" or the nonmoving party's "self-serving allegations unsupported by any corroborating evidence" cannot defeat summary judgment). Speculative allegations made on "information and belief" and not based on personal knowledge are insufficient to meet the evidentiary burden on summary judgment. *See Murray v. Beaver*, No. 3:18-CV-00641-MR, 2021 WL 3072467, at *9 (W.D.N.C. July 20, 2021) (unpublished) (citing *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021)).

### ii. ***McDonnell Douglas*** **Framework**

Title VII makes it "an unlawful employment practice for an employer … to discharge … or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *Johnson v. Harvey*, No. 1:05CV310 (JCC), 2006 WL 325744, at *2 (E.D. Va. Feb. 7, 2006) (unpublished). "[I]n employment discrimination … cases where a plaintiff does not present sufficient direct or circumstantial evidence showing that an adverse employment action was motivated by intentional discrimination aimed at the plaintiff's protected characteristic(s)," courts "apply[ ] the *McDonnell Douglas* burden-shifting framework." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). That framework is comprised of three steps. *Id.*

Case 1:23-cv-01112-JLW    Document 56    Filed 07/08/25    Page 7 of 30

First, the plaintiff must first "offer a prima facie case."[5] *Sempowich v. Tactile Sys. Tech., Inc.*, 19

F.4th 643, 649-650 (4th Cir. 2021) (citing *Lettieri v. Equant*, 478 F.3d 640, 646 (4th Cir. 2007)). *Id.*

> To do so, a plaintiff must show that (1) she is a member of a protected class;
> (2) her employer took an adverse action against her; (3) she had been fulfilling
> her employer's legitimate expectations at the time of the adverse action; and (4)
> the adverse action occurred under circumstances that raise a reasonable
> inference of unlawful discrimination, including because the employer left open
> the position or replaced the plaintiff with someone outside the protected class.

*Id.* (citing *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 n.8 (4th Cir. 2020)). "The burden at this

stage 'is not onerous,' and meeting it 'in effect creates a presumption that the employer

unlawfully discriminated against the employee.' " *Wannamaker-Amos v. Purem Novi, Inc.*, 126

F.4th 244, 255 (4th Cir. 2025) (citing *Westmoreland v. TWC Admin., Inc.*, 924 F.3d 718, 725 (4th

Cir. 2019) (quoting *Burdine*, 450 U.S. at 253-54)).[6]

To meet the burden as to the second factor, a plaintiff must demonstrate that she "was

performing her job duties at a level that met her employer's legitimate expectations at the time

of the adverse employment action[,]" *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277,

285 (4th Cir. 2004) (en banc), *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557

U.S. 167 (2009), or "by proffering evidence that demonstrates (or at least creates a question

of fact) that the employer's expectations were illegitimate." *Ruff v. Target Stores, Inc.*, 226 F.

---

[5] The undersigned notes that courts variously use the phrases "establish a prima facie case[,]" *see, e.g., Wannamaker-Amos*, 126 F.4th at 255, "set[ ]forth a prima facie case[,]" *see, e.g., Stafford v. Radford Cmty. Hosp., Inc.*, 120 F.3d 262 (4th Cir. 1997), or "make out a prima facie case[,]" *see, e.g., Lee v. Wade*, No. 3:15CV37, 2015 WL 5147067, at *3 (E.D. Va. Aug. 31, 2015) (unpublished), to refer to the requirements a plaintiff must satisfy to meet the burden at step one of the *McDonnell Douglas* framework.

[6] Presenting evidence that creates a genuine issue of material fact as to the factor(s) at issue in the prima facie case is sufficient to meet the plaintiff's burden at step one of the *McDonnell Douglas* framework. *See Reyes v. AutoZone, Inc.*, No. CIV.A 08-847, 2009 WL 4559454, at *7 (W.D. Pa. Dec. 2, 2009) (unpublished) (citing *Pivorotto v. Innovative Systems, Inc.*, 191 F.3d 344, 352–54 (3d Cir.1999)).

App'x 294, 301 (4th Cir. 2007). To meet the burden as to the fourth factor, it is sufficient for a plaintiff to present evidence that an employer replaced the plaintiff with someone outside the protected class who was comparably qualified. *Vincent v. MedStar S. Maryland Hosp. Ctr.*, No. CV TDC-16-1438, 2017 WL 3668756, at *6 (D. Md. Aug. 22, 2017) (unpublished).

Second, once the plaintiff offers a prima facie case, the burden of production then shifts to the employer to articulate a non-discriminatory reason for the adverse action. *See Guessous*, 828 F.3d at 216.

Third, the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reason for the adverse employment action was not the true reason for said action, that it was actually a pretext, and that the true reason is discriminatory. *Id.* The plaintiff "may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Burdine*, 450 U.S. at 256 (citing *McDonnel Douglas*, 411 U.S. at 804-05 (1973)). However, "[t]he ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000). "In cases where an employer adduces a nondiscriminatory reason for discharging the plaintiff and comparator evidence does not exist to rebut that explanation, the plaintiff must be able to point persuasively to some other form of evidence demonstrating that the employer's explanation was a mere pretext for discrimination." *Laing*, 703 F.3d at 720 (4th Cir. 2013).

Defendant argues that neither Plaintiff's Complaint nor her EEOC Charge "contain any allegations of direct evidence of racial discrimination[,]" that she "has provided no

documents or narratives in any discovery responses that would represent direct evidence of discrimination[,]" and that she must therefore rely on the *McDonnell Douglas* burden-shifting framework. (*See* Docket Entry 44 at 7.) Plaintiff does not dispute this argument. (*See* Docket Entries 46, 47.) Accordingly, the Court will begin with the *McDonell Douglas* analysis.[7]

**b. Analysis**

Here, although Plaintiff offers a sufficient prima facie case of discrimination, Defendant provides a legitimate, non-discriminatory reason for reassigning Plaintiff. Plaintiff does not show that Defendant's articulated reason was a pretext for unlawful discrimination. Thus, the undersigned will grant Defendant's Motion for Summary Judgment.

**i. Plaintiff meets her burden of showing a prima facie case of discrimination.**

It is undisputed that Plaintiff is a member of a protected class and that she experienced an adverse employment action. *See, e.g., Giles*, 59 F.4th at 704 ("As [an African-American] person, [the plaintiff] belongs to a protected class."); *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 355 (2024) (holding that transfer or reassignment may constitute adverse employment action, even if the harm incurred thereby was not "significant[;]" abrogating contrary rulings). Thus, only the second and fourth prima facie factors are at issue here.

---

[7] "A Title VII plaintiff may survive a summary judgment motion through one of two avenues of proof." *Dial v. Robeson Cnty.*, No. 1:20-CV-1135, 2023 WL 2652769, at *6 (M.D.N.C. Mar. 27, 2023), *aff'd*, No. 23-1474, 2024 WL 1576806 (4th Cir. Apr. 11, 2024) (unpublished). A plaintiff may establish through direct or circumstantial evidence that race, though not the sole reason, was a "motivating factor" in the adverse employment decision. *See Diamond v. Colonial Life & Accident Ins.*, 416 F.3d 310, 318 (4th Cir. 2005). Alternatively, a plaintiff may use the *McDonnell Douglas* burden-shifting framework. *See id.* Because the parties proceed under said framework in their arguments, this court will proceed under said framework in its analysis. *See generally Reeves*, 530 U.S. at 141.

1. **There is a genuine issue regarding Plaintiff's performance.**

*Defendant's Performance-Related Arguments*

Defendant argues Plaintiff cannot show a genuine issue of material fact regarding her job performance. (Docket Entry 44 at 8.) Defendant argues that the Reassignment Letter "identified various shortcomings in Plaintiff's performance, including that she was untimely or unresponsive in important communications, that she lacked an understanding of and did not prioritize budget issues within the EC department, that she lacked follow-through, and that she did not appropriately support staff." (*Id.* at 9; *see also* Docket Entry 44-1; Docket Entry 44-3; Docket Entry 55 at 8-10.) Defendant further argues that "[a]t Plaintiff's grievance hearing before the Board of Education, the district administration presented additional documentary evidence of these issues." (Docket Entry 44 at 9.)

Defendant submits as evidence the Davis Review Summary, a document containing notes made by Ms. Davis in response to her receipt of concerns about Plaintiff's performance from "various stakeholders" including "multiple principals[,]" "ABSS District Office Administrators," "ABSS Building Level Administrators," "the Department of Exceptional Children," and NCDPI. (Docket Entry 44-3.) Defendant argues that its evidence shows a "demonstrated pattern" of concerns from "people that worked under Ms. Banks, people that worked alongside her, or with her…[and] also people that worked from the [EC department] at the State level" regarding compliance, communication, and follow-through. (Docket Entry 44 at 9; *see also* Docket Entry 44-1 at 3; Docket Entry 44-3 at 3; 44-14 at 4.) Defendant argues that

> Dr. Davis supplied specific names associated with various quotes and comments captured in her review, including Chief Academic Officer Ravonda Johnson, Principal Greg Holland, EC Program Specialist April Brantley, EC Program Specialist Kara Ballard, NCDPI consultant Casey Favasuli, and

11

Principal Dr. Hancock [("Hancock")]. Davis Dep., pp.15:8-14; 19:8-15; 38:11-19; 40:16-20; 41:16-20; 42:11-17.

(Docket Entry 55 at 6.)

Defendant argues that Hancock stated, "[i]t takes days to get a response from [Plaintiff]. Emails are not returned in a timely manner. Voicemails are often not returned." (Docket Entry 44 at 9; Docket Entry 44-3 at 1.) Defendant argues that "Principal Hancock provided Dr. Davis with copies of specific emails demonstrating this concern[.]" (Docket Entry 44 at 9-10; *see also* Docket Entry 44-4.)

Defendant argues that Plaintiff failed in her duty to ensure compliance of programs with federal, state and local regulations, and to follow up with state complaints for correction or resolution. (*See* Docket Entry 44 at 11.) Defendant further argues that while under Plaintiff's leadership, there were three state complaints, one that "resulted in NCDPI finding the district in violation of state policies and ordering corrective action;" one that "required the district to enter into a settlement agreement to resolve;" and one that "the district had an opportunity to informally resolve but Plaintiff failed to follow through on implementation." (Docket Entry 44 at 10.)

Defendant also argues that Deborah Throm sent an email regarding Plaintiff's failure to take steps requested by a parent to resolve one of these matters. (*See id.*; *see also* Docket Entry 44-5.) Defendant contends that "Dr. Davis was also concerned by the fact that Plaintiff had told her that that final case was resolved and they were just awaiting results from NCDPI, which was not true. … Dr. Butler indicated concerns were also raised to him regarding the state complaints." (Docket Entry 44 at 11; *see also* Docket Entry 44-14 at 5;[8] Docket Entry

---

[8] Defendant cites to portions of this deposition that were initially not attached to its Memorandum in support of its Motion to Dismiss. (Docket Entry 44 at 11; Docket Entry 44-14.)

12

44-15 at 6.)  Defendant argues that "[b]y contrast, during Dr. Davis's tenure as Exceptional Children's Director there had been only one state complaint, and that one had been inherited from the previous Director."  (Docket Entry 44 at 11; Docket Entry 44-14 at 5.)

Defendant further argues that "[a]nother area of serious concern revealed by Dr. Davis's review was Plaintiff's lack of understanding and lack of proper handling of budgets and funding issues[,]" including her "[l]ack of fiscal understanding and management."  (Docket Entry 44 at 11; Docket Entry 44-3 at 3.)  Defendant argues that a retired veteran EC director "filled in for Plaintiff during Plaintiff's maternity leave, and commented that Plaintiff 'appeared not to know the specifics about the 070 grant process' and remarked upon '[t]he apparent lack of fiscal oversight and planning in the EC department.' "  (*Id.*)

Defendant contends that "[a]ccording to information Dr. Davis received from NCDPI, Plaintiff failed to submit six Risk Pool funding applications, costing the district … approximately $180,000."  (Docket Entry 44 at 11; Docket Entry 44-3 at 4.)  Defendant further contends that "Plaintiff failed to spend approximately $1,000,000 in emergency federal funding during the COVID-19 pandemic."  (Docket Entry 44 at 11; Docket Entry 44-3 at 4; Docket Entry 44-11 at 21-24.)  Defendant goes on to contend that "Plaintiff's explanation in her deposition for this failure was that she 'did not know that we had it,' … which only affirms the lack of fiscal understanding and management cited by others."  (Docket Entry 44 at 12; Docket Entry 44-13 at 11-13.)  Defendant also argues that Plaintiff struggled to complete "her required state funding grant application, which caused a delay of five months in receiving

---

Defendant's Correction Notice remedies this error.  (Docket Entry 54; *see also* Docket Entries 54-1, 54-2, 54-3 (providing missing pages from excerpts of the depositions of Plaintiff, Ms. Davis, and Superintendent Butler, respectively).)

approval for those critical funds. According to Dr. Davis's conversations with NCDPI staff, this was 'further evidence of the concerns regarding fundamental fiscal management skills necessary for an EC Director.' " (Docket Entry 44 at 11; Docket Entry 44-3 at 2; Docket Entry 44-6; Docket Entry 44-14 at 7.) Defendant concludes that these issues demonstrate Plaintiff's failure to meet her employer's expectations. (*See* Docket Entry 44 at 13.)

Lastly, Defendant addresses Plaintiff's positive performance evaluation thusly:

… Plaintiff's only performance evaluation on file, from departing Assistant Superintendent Dr. Angela Bost [("Bost")], was very positive. [(Docket Entry 44-10.)] However, Dr. Davis's review revealed many issues that [Bost's] evaluation did not address and that show beyond question that Plaintiff was not performing her job satisfactorily. As Dr. Davis stated in her deposition, "I do not know what sources [Bost] used to prepare this evaluation. They were not consistent with the feedback I received from people that she worked with or people at the same level." [(Docket Entry 44-14 at 8.)] Because the evaluation does not contradict the feedback received from Dr. Davis in her review, it does not create a genuine issue of material fact regarding whether Plaintiff's performance was satisfactory.

(*Id.*; *see also* Docket Entry 55 at 9-10.) Defendant goes on to argue in its Reply that Plaintiff incorrectly asserts that Ms. Davis's information was collected after the reassignment decision (Docket Entry 55 at 4-5) and that "Plaintiff fails to support [her] allegation that the employer's expectations were 'illegitimate.' " (*Id.* at 6-8.)

### *Plaintiff's Performance-Related Arguments*

Plaintiff argues that she "was an exemplary employee and had consistently performed in accordance with Defendant's expectations." (Docket Entry 46 at 8.) It is undisputed that, in the June 2022 Evaluation, Plaintiff received the highest rating, "Distinguished[,]" in four of the five rating categories, and she received an "Accomplished" designation in the fifth. (*Id.*; Docket Entry 44-10; Docket Entry 46-3.) Plaintiff argues that Ms. Davis "never evaluated Plaintiff's job performance prior to demoting her and did not receive nor solicit any input from Plaintiff's former

14

supervisor and evaluator[, Bost].” (Docket Entry 46 at 2-3; Docket Entry 46-1 at 11-14.) Plaintiff contends that “Defendant’s expectations were rankly illegitimate.” (Docket Entry 46 at 9.)

Plaintiff goes on to argue that Superintendent Butler “never met with the Plaintiff prior to demoting her.” (Docket Entry 46 at 9; *see also* Docket Entry 44-15 at 5.) She argues that “[h]e noted ‘concerns’ brought to his attention by board members, principals, and parents” but that he did not have any written correspondence from anyone who expressed concerns to him regarding Plaintiff. (*See* Docket Entry 46 at 9; *see also* Docket Entry 44-15 at 9.) Plaintiff argues that board members “do not have any day-to-day involvement with her program.” (Docket Entry 46 at 9.) Plaintiff further argues that “[i]t defies common sense that no one contacted Plaintiff’s previous supervisor about her alleged shortcomings. … Ironically, the only complaint about the grant and budgeting process was brought by Plaintiff herself, in 2019, and included issues during Davis’s tenure.” (*Id.*; Docket Entry 47-2.)

### The Court’s Findings as to Plaintiff’s Performance

Here, the undersigned finds that Plaintiff has at least raised a genuine issue of material fact as to whether she was performing her job duties at a level that met her employer’s legitimate expectations at the time of the adverse employment action. An employee “may establish that she was meeting her employer’s expectations by providing: (1) her employer’s concessions that she was performing satisfactorily at the time of the adverse action; [or] (2) evidence of prior positive performance reviews from the employer[.]” *Conyers v. Va. Hous. Dev. Auth.*, 927 F.Supp.2d 285, 292 (E.D.Va. 2013), *aff’d*, 533 Fed. Appx. 342, 342 (4th Cir.2013) (citing *King,*

15

328 F.3d at 149-50;  *Jones v. Calvert Grp., Ltd.*, No. CIV.A. DKC 06-2892, 2010 WL 5055790, at *6-7 (D. Md. Dec. 3, 2010) (unpublished), *aff'd*, 440 F. App'x 220 (4th Cir. 2011)).[9]

In *Sempowich*, 19 F.4th at 649-650, the Fourth Circuit held that at the prima facie stage, the inquiry regarding performance is not necessarily confined to the employer's perception of the employee's performance, and that an employee may satisfy this factor of her prima facie case by introducing evidence that raises a question of fact as to whether the employer's expectations were legitimate or genuine by pointing to positive reviews or events that took place near the time of the adverse action.  *Tedder v. CareSouth Carolina, Inc.*, No. CV 4:20-707-SAL-KDW, 2021 WL 8014682, at *14 (D.S.C. Dec. 15, 2021) (unpublished), *report and recommendation adopted sub nom. Tedder v. Care S.C., Inc.*, No. CV 4:20-707-SAL, 2022 WL 909397 (D.S.C. Mar. 29, 2022).  Furthermore, again, "a plaintiff may [offer] a prima facie case by [producing] evidence that demonstrates (or at least creates a question of fact) that the employer's expectations were illegitimate."  *See Ruff*, 226 F. App'x at 301; *see also Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, (4th Cir. 2006).

First, to the extent that "the inquiry regarding performance is not necessarily confined to the employer's perception of the employee's performance[,]" Plaintiff's Rebuttal Letter

---

[9] However, "the fact that plaintiff may have received positive performance evaluations in earlier years [is not] dispositive of the question whether the [employer] was satisfied with plaintiff's performance and professional conduct during the years immediately preceding [her] termination."  *Luther v. Gutierrez*, 618 F. Supp. 2d 483, 492 (E.D. Va. 2009).  For example, where an "employer repeatedly warned the employee about work deficiencies occurring over an eighteen-month period prior to the employment action" but "[t]he employee had otherwise received raises and favorable reviews for the eight-year period she worked[,]" a prior positive performance review would be insufficient to offer a prima facie case, because "summary judgment for the employer is appropriate where poor job performance at the time of employment action is only contradicted by evidence the employee performed well in the past."  *Holtz v. Jefferson Smurfit Corp.*, 408 F. Supp. 2d 193, 204 (M.D.N.C. 2006), *aff'd*, 242 F. App'x 75 (4th Cir. 2007) (citing *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 328-29 (7th Cir. 2002)).

16

(Docket Entry 44-17) and 2019 Letter (Docket Entry 47-2) support her argument that she has offered a prima facie case. *See Tedder*, 2021 WL 8014682, at *14. However, the undersigned acknowledges that, via this approach, Plaintiff "can prove only the unremarkable fact that she and [her employer] disagreed about the quality of her work." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Without more, Plaintiff's contention that her employer's expectations were illegitimate, supported only by the Rebuttal Letter and the 2019 Letter, is insufficient to create a genuine issue of material fact as to the issue of performance.

However, taking all evidence and inferences drawn therefrom in the light most favorable to Plaintiff, there is an issue of material fact as to whether her employer's expectations at the time of her demotion, as asserted via Ms. Davis, were legitimate or genuine. Plaintiff presented evidence that could lead to the inference that they were not. "If an employer genuinely believed that one of its employees was performing poorly … , it seems likely that it would at the very least not rate the employee's performance highly…." *Sempowich*, 19 F.4th 643, 650 (4th Cir. 2021). And yet there is evidence that Plaintiff's employer (via Bost) rated Plaintiff's overall performance highly only three weeks prior to her demotion. (Docket Entries 44-10; 46-3; *see also* Docket Entry 46-1 at 14.) The Fourth Circuit has previously held that similar evidence was sufficient to survive summary judgment. *See Sempowich*, 19 F.4th at 651 (citing *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019)). Here, as in *Haynes* and *Sempowich*, there is evidence that Plaintiff's employer signaled to Plaintiff that it viewed her overall performance positively. "[I]f [Defendant] asserts that it reassigned [Plaintiff's] position due to weaknesses she supposedly demonstrated throughout most of her tenure, it cannot simultaneously argue that the court should ignore evidence about her performance during that same period." *Id.*

17

Moreover, the lack of any apparent effort by Defendant, via Ms. Davis and/or Superintendent Butler, to seek to correct Plaintiff's alleged shortcomings prior to her demotion or to enable her to improve her performance by being provided with an action plan or a performance-improvement plan ("PIP") (Docket Entry 46 at 6, 12; Docket Entry 46-1 at 15; Docket Entry 47-3 at 1-3; *see also* Compl. ¶¶ 40-41), supports a finding that Plaintiff has sufficiently offered the second factor of her prima facie case. *See Caban v. MET Lab'ys, Inc.*, No. CV JKB-17-1872, 2019 WL 2146915, at *8 (D. Md. May 16, 2019) (unpublished) (collecting cases).

However, this does not mean that a factfinder will ultimately find in Plaintiff's favor on the disparate treatment claims. *See Sempowich*, 19 F.4th at 651. Rather, the undersigned finds only that, as to first step of the *McDonnell Douglas* framework, a court cannot grant a party summary judgment when there are genuine issues of material fact, and here the record reveals factual disputes as to one of the key factors of Plaintiff's prima facie case. *See id.* Having found that there is a genuine issue of material fact as to whether Plaintiff met her minimal burden to show that she performed her job in a satisfactory manner that met her employer's legitimate expectations, the undersigned now turns to the fourth factor of the prima facie case.

## 2. Plaintiff has met her burden of producing evidence supporting an inference of unlawful discrimination.

At the prima facie stage, evidence that a plaintiff's job was filled by an individual outside of her protected class supports a reasonable inference of discrimination. *Wannamaker-Amos*, 126 F.4th at 255 (citing *Lettieri*, 478 F.3d at 647); *see also Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 451-52 (S.D.N.Y. 2013) ("It is well-settled, however, that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice" to establish the required inference of discrimination at the prima facie stage.") (citing *Zimmermann v. Assocs. First Capital*

18

*Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014); *see also Moffat v. First Union Nat. Bank*, No. 3:97CV234-MCK, 1999 WL 1940057, at *2 (W.D.N.C. Jan. 4, 1999) (unpublished) (discussing Title VII discrimination claim in terms of "wrongful discharge"); *Tilghman v. Waterbury Bd. of Educ.*, 312 F. Supp. 2d 185, 189 (D. Conn. 2004), *aff'd*, 154 F. App'x 221 (2d Cir. 2005) (plausible assertions of discrimination combined with undisputed fact that plaintiff was fired by a white superintendent and a majority-white board sufficed to complete prima facie case). The undisputed evidence in the record shows that Plaintiff was replaced by Lessley Saenz-Mader, a Caucasian person. (Docket Entry 44-7 at 7.) This evidence suffices to meet Plaintiff's burden to show that her demotion occurred under circumstances that raise a reasonable inference of unlawful discrimination. Thus, the evidence in the record as to Plaintiff's job performance and as to Plaintiff's replacement by Saenz-Mader is sufficient to make out a prima facie case of racial discrimination.[10]

### ii. Defendant has produced a legitimate, nondiscriminatory reason for Plaintiff's demotion.

At the second *McDonnell Douglas* step, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Wannamaker-Amos*, 126 F.4th at 256-57 (ultimately quoting *Hill*, 354 F.3d at 286). The employer's burden at this stage "is one of production, not persuasion; it can involve no credibility assessment." *Id.* (citing *Reeves*, 530 U.S. at 142 (internal citation omitted)). Once "an employer articulates a

---

[10] Accordingly, at the prima facie stage, the Court need not address Defendant's argument regarding comparators (Docket Entry 44 at 14-19; Docket Entry 55 at 1-4). *Tedder*, 2021 WL 8014682, at *15 (declining to "delv[e] into the comparator analysis" where "the discussion of a change in status near the time of termination is sufficient for [Plaintiff's] relatively light prima facie burden" and finding that "Plaintiff has set forth evidence of an inference of discrimination, thereby satisfying the fourth [factor] of the prima facie case").

reason for discharging the plaintiff not forbidden by law," we do not evaluate "whether the reason was wise, fair, or even correct." *Id.* (cleaned up).

Here, again, Defendant claims Plaintiff was reassigned due to "various shortcomings in Plaintiff's performance, including that she was untimely or unresponsive in important communications, that she lacked an understanding of and did not prioritize budget issues within the EC department, that she lacked follow-through, and that she did not appropriately support staff." (Docket Entry 44 at 9, 11-13; *see also* Docket Entries 44-1, 44-2, 44-3, 44-4, 44-5, 44-6, 44-11; 55-1.) Moreover, Defendant argues that Plaintiff's reassignment was one of many personnel changes made pursuant to a management decision by Superintendent Butler to

> reassign[ ] multiple … central office staff to new roles in order to reduce the size of the leadership cabinet and because certain district leaders had no experience as school principals, which Dr. Butler felt was essential to being a successful supervisor of principals. [(Docket Entry 54-3 at 16; Docket Entry 44-7 at 5-6.)]

(Docket Entry 44 at 3.) The undersigned finds that Defendant has thus produced evidence sufficient to shift the burden back to Plaintiff.

### iii. There is no genuine issue of material fact as to pretext.

The undersigned now turns to the third and final step under *McDonnell Douglas*. Here, the burden shifts back to Plaintiff to produce evidence sufficient to create a material issue of fact as to whether Defendant's alleged reason for the adverse employment action was not its true reason, but rather a pretext for discrimination. *Wannamaker-Amos*, 126 F.4th 244, 257 (4th Cir. 2025) (citing *Haynes*, 922 F.3d at 223). A plaintiff may establish pretext through two routes. The first is offering evidence that the employer's justification is "unworthy of credence." *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 256). The second is adducing other forms of circumstantial evidence sufficiently probative of discrimination. *Id.* at 147.

"Proof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." *Id.* If the plaintiff makes either showing of pretext, the case must be decided by a trier of fact and cannot be resolved on summary judgment. *Sempowich*, 19 F.4th at 652. For the following reasons, Plaintiff has failed to meet her burden as to pretext.

### Plaintiff's Pretext Arguments

Plaintiff makes the cursory argument that "in the potential summary judgment argument, if and when the Defendant proffers some reason other than that stated in [the Reassignment Letter], the same, under *McDonnell Douglas*, would amount to pretext." (Docket Entry 46 at 13.) Defendant has not done so (*see generally* Docket Entries 44, 55), and this argument thus fails. Plaintiff goes on to argue that

> Contrary to the obfuscations of the Defendant, Davis knew nothing about the Plaintiff nor her performance. [(Docket Entry 46-1 at 11-14.)] Davis received no written documentation of any "concerns" she allegedly discovered after demoting Plaintiff, and in preparation for the grievance hearing, which took place two … months after the July 19, 2022[,] demotion. [(Docket Entry 46-1 at 11; Docket Entry 47-4.)] Davis claims she took notes, but did not keep them. The four[-]page, single-spaced document is replete with quotes, allegedly from "stakeholders" that provided her with that information after the fact. Here, she admits it was in preparation for the grievance hearing. It is undoubtedly disingenuous and self-serving as Davis is unable to support any of the allegations at the time of the demotion. Quite frankly, the document actually supports Plaintiff's "pretext" argument under *McDonnell Douglas* discussed more fully below.
>
> The Defendant's argument on this issue is specious at best. Any attempt to manufacture support to justify a decision to demote Plaintiff, practically immediately, should not be rewarded with the grant of a dispositive motion. The glaring problem with Defendant's argument on this issue, and the very reason it fails, is that Defendant's expectations were rankly illegitimate.
>
> Further to the point, Butler never met with the Plaintiff prior to demoting her. He could not identify anyone that had an issue with Plaintiff's performance. He noted "concerns" brought to his attention by board members, principals, and

21

parents. However, he could not identify any principals nor EC program specialists that had issues with Plaintiff's job performance. [(Docket Entry 44-15 at 9.)] Butler's testimony about board members having issues with Plaintiff is informative as they do not have any day-to-day involvement with her program.

Finally on the issue of job performance, it is difficult to fathom how the plethora of issues allegedly identified by Defendant, never reached anyone at the system capable of addressing the same. It defies common sense that no one contacted Plaintiff's previous supervisor about her alleged shortcomings. ... Ironically, the only complaint about the grant and budgeting process was brought by Plaintiff herself, in 2019, and included issues during [Ms.] Davis's tenure.

(Docket Entry 46 at 8-9.)

### 1. Plaintiff fails to show Defendant's justification for the adverse employment action is unworthy of credence.

Contrary to Plaintiff's contention, Defendant has submitted evidence that Ms. Davis was directed to investigate concerns about Plaintiff's performance, that she collected a substantial volume of information about Plaintiff and her performance, and that the assessment of said information led her to recommend to Superintendent Bulter that Plaintiff be reassigned. (Docket Entries 44-1, 44-3; Docket Entry 54-2 at 3-5, 6-7, 8, 10.) This includes written documentation and notes she took. (Docket Entries 44-1, 44-3.) At least some of this evidence was collected in support of her reassignment recommendation prior to the adverse employment action (Docket Entry 44-3 at 1; *see also* Docket Entry 55 at 5), and Ms. Davis received additional negative feedback about Plaintiff's performance after said action (Docket Entry 44-3 at 3). As Defendant points out, Plaintiff has offered no evidence that Ms. Davis's statement that "July 5-18, 2022, I received feedback from various stakeholders within the district" is untrue. (Docket Entry 55 at 4.)

Moreover, Plaintiff herself made statements in her deposition that tend to support some of Ms. Davis's findings as to Plaintiff's unsatisfactory performance. For example, regarding more than one million dollars of unspent grant funds, Plaintiff stated, "I don't know

22

that I knew I had the money to spend." (Docket Entry 54-1.) Defendant also includes a grant timeline that outlines a series of delays and errors that resulted in the submission of a grant more than four months after its deadline. (*See* Docket Entry 44-6; 44-11 at 27-34.) While not necessarily corroborative of Ms. Davis's finding of Plaintiff's "lack of fiscal understanding and management" (Docket Entry 44-1; Docket Entry 44-3 at 2; Docket Entry 44-13 at 10), Plaintiff's statement does not support her argument that Defendant's justification was unworthy of credence. Similarly, Plaintiff does not offer evidence to refute the evidence submitted by Defendant tending to support its contention that Plaintiff was untimely or unresponsive in important communications. (*See, e.g.*, Docket Entry 44-4 (email from Hancock describing unresponsive communication by Plaintiff).)

As to Superintendent Butler, Plaintiff's argument that he never met with her before demoting her does not establish pretext; Plaintiff's argument that Superintendent Butler could not identify anyone that had an issue with her performance, while technically correct (*see* Docket Entry 54-3 at 4) is misplaced. The contention that this could somehow establish pretext is undermined by the fact that Superintendent Butler himself did not conduct Plaintiff's performance review, and that Ms. Davis, who did conduct said review, was able to supply "specific names associated with various quotes and comments captured in her review, including Chief Academic Officer Ravonda Johnson, Principal Greg Holland, EC Program Specialist April Brantley, EC Program Specialist Kara Ballard, NCDPI consultant Casey Favasuli, and Principal Dr. Hancock. [(Docket Entry 55-1 at 5-6, 11-14.)]" (Docket Entry 55 at 6.) To the extent Plaintiff attempts to call into question the validity of the quotes from these stakeholders, she does not do so by introducing any conflicting evidence. Moreover, Plaintiff herself stated in a deposition that she has no

23

evidence that Ms. Davis fabricated any of the quotes in the review summary and findings for the board appeal hearing. (Docket Entry 54-1 at 9-10; Docket Entry 44-3.)

Plaintiff offers no evidence to support her contention that Ms. Davis's assessment was disingenuous and self-serving. Nor does she support with any evidence her contention that her employer's expectations were illegitimate. As Defendant points out, Plaintiff does not even identify what she believes said expectations were. (Docket Entry 55 at 7.) However, Defendant submits evidence outlining what it contends were its reasonable expectations of Plaintiff (Docket Entry 44-12 (ABSS Executive Director of EC Job Description)), and, again, Plaintiff offers no contradictory evidence. In sum, Plaintiff's arguments fall far short of demonstrating that Defendant's justification for the adverse employment action is unworthy of credence.

## 2. Plaintiff fails to adduce other forms of circumstantial evidence sufficiently probative of discrimination.

One possible means by which Plaintiff could prove pretext is by offering evidence showing that she was held to different standards than others in similar leadership positions. *See, e.g.*, *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 719 (4th Cir. 2013) ("[I]t is at [the] third step that *McDonnell Douglas* identified the significance of comparator evidence: the Court explained that 'especially relevant' to a showing of pretext would be evidence that other employees who were similarly situated to the plaintiff (but for the protected characteristic) were treated more favorably."); *Sempowich*, 19 F.4th at 650. Here, however, Plaintiff provides no evidence of a comparator who could support a showing of pretext.[11] Plaintiff offers no evidence of any other

---

[11] Plaintiff's allegations (*see* Compl. ¶¶ 14-18) made "upon information and belief[,]" to the extent they are relied on to make arguments regarding possible comparators, are insufficient to meet her evidentiary burden on summary judgment. *Murray*, 2021 WL 3072467, at *9.

person who was assessed and found to have comparable performance issues and yet was not subject to adverse employment action.  In fact, Plaintiff testified that she had no knowledge of any cabinet member outside of a protected class who was not reassigned despite having documented performance issues.  (Docket Entry 44-13 at 15-16.)  Plaintiff argues that

> Defendant[ ] employed approximately [21] persons in leadership roles within the past [five] years.  Of those, [four] were African-American.  From August[ ] 2022, one month from the hire date for both Butler and Davis, until May[ ]2024, [zero] African-Americans were in leadership roles.  [(Docket Entry 44-7.)]  [Three] African-Americans were employed in leadership roles in July[ ]2022.

(Docket Entry 46 at 5.)  The undersigned acknowledges that "[s]tatistics can provide important proof of employment discrimination," both as part of a prima facie case and in showing pretext. *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994).  Courts may, however, disregard statistical evidence "with little or no probative value."  *See id.*  Moreover, "[s]tatistics alone are not sufficient to prove pretext in individual disparate treatment cases" and "an employer's overall employment statistics will have little direct bearing on the specific intention of the employer when making a particular adverse employment decision."  *Id.* (citing *Bostron v. Apfel*, 104 F. Supp. 2d 548, 554-55 (D. Md. 2000), *aff'd*, 2 F. App'x 235 (4th Cir. 2001); *Luqmaan v. Volvo Grp. N. Am., LLC*, 94 F. Supp. 3d 762, 771 (W.D. Va. 2015) (statistical evidence purporting to show disparate treatment could not show that the "particular reassignment" at issue "formed part of that pattern")).

Here, Plaintiff has offered no evidence that the statistics she proffers were relevant to Ms. Davis's or Superintendent Butler's personal intentions.  She makes no comparison to the relevant labor pool and does not support her statistics with expert testimony.  Furthermore, Plaintiff does not account for the evidence in the record that Lajuana Norfleet (another African-

American woman subject to adverse employment action in July 2022)[12] was replaced by Yolanda Anderson, an African-American woman, who began serving as Executive Director for Student and Family Services beginning on September 1, 2022. (Docket Entry 44-7 at 7.) The undersigned therefore finds that Plaintiff's proffered statistics, without more, fail to establish pretext. *Accord Carter*, 33 F.3d at 456; *Brown v. First Cmty. Bank*, No. 7:18CV00404, 2019 WL 5445300, at *6 (W.D. Va. Oct. 23, 2019) (unpublished), *aff'd*, 814 F. App'x 788 (4th Cir. 2020).

Plaintiff's sole remaining contention with regard to comparators is that "none of the other leadership 'reassignments' put members outside of the protected class in positions where they were lateral to co-workers they formally [sic] supervised." (Docket Entry 46 at 10.) She argues that Richardson and Finberg, both Caucasian females, were "reassigned from a Chief's position to an Executive Director. However, Plaintiff was not." (*Id.*) While it is undisputed that she, Finberg, and Richardson dealt with the same supervisor, Plaintiff offers no evidence that these three were subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Haynes*, 922 F.3d at 223-24 (4th Cir. 2019) (cleaned up) (quoting *Haywood*, 387 Fed. App'x at 359); *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 265 (4th Cir. 2008) ("The similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful."). Thus, without more, Plaintiff's contention is insufficient to create a genuine issue of material fact as to

---

[12] Defendant produced evidence contradicting Plaintiff's assertion (Docket Entry 46-2 at 4-5) that another African-American woman, Valerie Andrews, was demoted. (Docket Entry 44 at 19 n.1 ("Dr. Butler corrected that point, sharing that he 'had no concerns with Dr. Andrews' and 'she did a great job' and he 'did not' reassign her. [(Docket Entry 44-15 at 9.)] Dr. Davis confirmed that Dr. Andrews was not reassigned. [(Docket Entry 44-14 at 9.)]").)

Finberg and Richardson as comparators. Furthermore, Plaintiff offers no argument or evidence to dispute Defendant's contention that "the fact that Jeremy Martin (a white man [with performance concerns]) was moved from Director of School Administration to an assistant principal (which is a school administrator) strongly suggests that Mr. Martin was also moved to a position where he was lateral to school administrators that he was formerly the director over." (*See* Docket Entry 44 at 3, 15, 17; Docket Entry 44-15 at 13; *see also* Docket Entry 44-3 at 14; Docket Entry 55 at 2.) Accordingly, Plaintiff's comparator arguments fail.

Plaintiff argues that "[p]rior to her demotion, Plaintiff was not placed on a monitored growth, directed growth, or mandatory improvement plan as per board policy." (Docket Entry 46 at 6; Docket Entry 46-1 at 15.) Reference is made in the record to ABSS "Policy 7811, Plans for Growth and Improvement of Licensed Employees." (Docket Entry 44-14 at 8; *see also* Docket Entry 44-15 at 11.) Policy 7811 provides, in pertinent part, that

> [i]f an employee does not meet this standard, the superintendent and administrative staff shall address any identified performance or other deficiencies through appropriate means, including placing the employee on a monitored growth, directed growth, or mandatory improvement plan when required by state law, State Board policy or this policy, or when otherwise deemed necessary.

(Docket Entry 46-1 at 15.) Plaintiff makes no argument that she was entitled to being placed on an improvement plan under this policy. The undersigned takes judicial notice of the subsequent paragraph of Policy 7811, which states:

> Growth and mandatory improvement plans as defined by law and this policy are valuable tools to promote the professional development of licensed employees. The board recognizes, however, that *not all conduct and performance issues require the development of a plan. Administrators and supervisory personnel are authorized to address … inadequate performance using such other lawful means as they may deem appropriate.* This policy shall not be interpreted to limit in any way the

27

authority of administrators or other supervisory personnel to direct and reprimand licensed employees for … inadequate performance.[13]

Thus, the language of the policy itself suggests Plaintiff was not entitled to be placed on any improvement plan, and that the decision was ultimately at her employer's discretion. Even assuming *arguendo* that Plaintiff was entitled to placement on such a plan, Defendant's failure to so place her, without more, is insufficient to establish pretext. *Tweed v. Rappahannock Reg'l Jail*, No. 1:16-CV-01164, 2017 WL 6395853, at *3 (E.D. Va. Dec. 14, 2017), *aff'd*, 720 F. App'x 171 (4th Cir. 2018); *see also Joyner-Pettway v. Cvent, Inc.*, No. 116CV892LMBTCB, 2017 WL 519860, at *6 (E.D. Va. Feb. 7, 2017) (unpublished) (plaintiff's suggestion that employer's failure to put her on PIP was not sufficient evidence of pretext to survive summary judgment where plaintiff offered no information about how often employer decides to put employees on PIP as opposed to terminating them, and offered no evidence of what criteria employer uses to decide whether a PIP would be appropriate); *Weil v. Sunrise Senior Living Mgmt., Inc.*, No. CV RDB-20-701, 2021 WL 5742383, at *9 (D. Md. Dec. 1, 2021) (unpublished) (similar) (citing *DeJarnette v. Corning Inc.*, 133 F.3d 293, 298-99 (4th Cir. 1998)); *E.E.O.C v. Clay Printing Co.*, 955 F.2d 936, 946 (4th Cir. 1992) ("It is not for this court or any other governmental agency to direct the business practices of any company."). Thus, Plaintiff's argument regarding the lack of placement on an improvement plan is unavailing.

Plaintiff offers two letters she wrote and her single positive performance review by Bost to refute the many performance issues identified by Defendant. (Docket Entries 44-10, 44-17;

---

[13] ABSS Policy Manual (Policy Code 7811), https://filecabinet9.eschoolview.com/560B0526-97E5-4B9F-BAA3-A6B0666EA9F9/7000%20Series/7811PlansforGrowthandImprovementofLicensedEmployees.pdf (last visited July 2, 2025) (emphasis added).

46-3; 47-1; 47-2; 47-3.) Plaintiff does not support these with testimony or affidavits from Bost, or from any other individual who might be in a position to offer an assessment contrary to that of Ms. Davis or Superintendent Butler. Again, the fact that Plaintiff herself disagrees with her employer's evaluation of her performance and its ultimate decision to reassign her, without more, cannot meet her burden at the third *McDonnell Douglas* stage. The same is true as to her contention that Bost or "anyone at the system" should have been contacted regarding her performance issue prior to her reassignment. (*See* Docket Entry 46 at 9.)

Ultimately, "Plaintiff's suspicions of ill intent and perceived superiority are insufficient to create a genuine issue of material fact regarding pretext." *Williamson v. Sch. Bd. of the City of Chesapeake*, No. 2:23CV224, 2025 WL 1008577, at *10 (E.D. Va. Mar. 17, 2025) (citing *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 248 (4th Cir. 2020) (explaining that it is the "perception of the decision maker which is relevant, not the self-assessment of the plaintiff"); *Vannoy v. FRB of Richmond*, 827 F.3d 296, 305 (4th Cir. 2016) (explaining that a "plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate non-discriminatory reasons" for an employment decision); *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007) (explaining that, with respect to pretext, the plaintiff's self-assessment is irrelevant); *McNaught v. Va. Cmty. College Sys.*, 933 F. Supp. 2d 804, 824 (E.D. Va. 2013) (finding plaintiff's disagreement with defendant's decision insufficient to establish pretext and escape summary judgment). Contrary to Plaintiff's characterization, Defendant has submitted sufficient evidence to support its argument that the decision to demote Plaintiff was not motivated by racial discrimination. Critically, Plaintiff has submitted insufficient evidence of her own to dispute this argument or to otherwise create a genuine issue of material fact as to pretext.

In sum, the evidence, viewed in a light most favorable to Plaintiff, would not permit a reasonable factfinder to determine that the reasons Defendant gave for subjecting Plaintiff to the adverse employment action represented pretext for race discrimination. *Accord James v. R.J. Reynolds Tobacco Co.*, No. 1:09CV552, 2013 WL 286248, at *8 (M.D.N.C. Jan. 24, 2013) (unpublished). Defendant has provided a non-discriminatory reason for said action. Plaintiff, in turn, has failed to show that record evidence raises a material question of fact regarding whether Defendant's explanation constitutes pretext for racial discrimination.

## III. <u>CONCLUSION</u>

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Docket Entry 43) is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

A judgment reflecting this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 8th day of July, 2025.

_____
/s/ Joe L. Webster
United States Magistrate Judge

30